Converse *v.* Hawse (et al., Appellants).

Argued January 12, 1937.   Before Kephart, C. J.,
Schaffer, Maxey, Drew, Linn, Stern and Barnes, JJ.

(1)

*Murray M. McGuire,* with him *William H. Satter-thwaite, Webster Grim* and *Howard I. James,* for appellant.

*Thomas Ross* and *John Ross,* with them *Samuel Meyers,* for appellee.

*Murray M. McGuire* and *John P. Betz,* filed a brief for the defendant, under Rule 61.

OPINION BY MR. JUSTICE SCHAFFER, March 22, 1937:

This is a foreign attachment proceeding, and the matter to be decided is, whether the fund in the hands of the garnishee, Doylestown Trust Company, should go to the plaintiff, under his attachment, or, to Cora M. Peck, as the result of certain writings, signed by the defendant, Hawse. Plaintiff had entered judgment against Hawse. The jury found in favor of the garnishee, the effect of which was to determine that the fund belonged to Cora M. Peck. The court entered judgment non obstante veredicto in favor of plaintiff and against the garnishee. The garnishee appeals.

Hawse was indebted to Mrs. Peck, who is his mother-in-law, in a considerable sum represented by his demand notes. To secure this indebtedness Hawse had pledged

with Mrs. Peck certain collateral. Desiring to procure a loan elsewhere, Hawse on June 7, 1932, wrote to Mrs. Peck as follows: "I wish to borrow the 1830 shares of stock of Acceptance Corpn of Va pledged with you for a few weeks, in order to borrow some money, $10,000.00, *and will hold for your account in substitution* [italics supplied] a 1st Mort note for $5000 and considerable accumulated Int on a farm in Bucks Co., Penna. and a farm adjoining in Bucks Co. for which I paid some $12,000.00. The note is now held by Doylestown Tr. Co. Will in due course whenever desired, have these duly transferred and delivered to you." Mrs. Peck agreed to this arrangement and surrendered the collateral.

In the following December, Hawse agreed to sell the farm referred to in the letter, and known as the Paxson Farm, and executed a deed to Webster Grim, Esq., who was acting as intermediary for the prospective purchaser. On December 19th, Hawse delivered to the Doylestown Trust Company, through which settlement was to be made, a letter, the material parts of which are: "I am enclosing herewith the following papers: Deed transferring the Paxson Farm to Webster Grim. You will deliver the above papers to Webster Grim any time on or before December 31, 1932, only upon the receipt of $4,000.00 *for the account of Cora M. Peck.* [Italics supplied.] If securities are taken up, you will kindly forward me your check, payable to Cora M. Peck." The instruction to forward the check through Hawse was given because Mrs. Peck was sick and Hawse had agreed to handle the matter for her.

This contemplated sale of the farm fell through, but another purchaser was found, and, on June 29, 1933, the Trust Company, at the request of Mr. Grim, was again instructed to deliver the papers to him, by the following letter from Hawse to the Trust Company: "On December 19, 1932, I wrote you enclosing certain papers, including a deed to the Paxson Farm, with the

4

instructions to deliver same to Mr. Webster Grim, of your city, upon the payment of $4,000.00. I am just in receipt of a letter from Mr. Grim stating that they are now in a position to take up these papers, but wanted me to give you new authority to do so. This is to advise you that, upon payment of $4,120.00 ($120.00 being 6 months' interest), you are authorized to deliver these papers to Mr. Webster Grim. Upon delivery of these papers, you will kindly forward me your check, payable to Cora M. Peck, for $4,120.00." When the settlement was made through the Trust Company, it drew its check to Mrs. Peck for $4,120.00, but, before the check was mailed, plaintiff's attachment was served on the Trust Company. It held the check and has done nothing further.

In the light of the letters, and of the transaction between Hawse and Mrs. Peck, in which he withdrew from the collateral she held for his debt the security mentioned in the first letter, and agreed to "hold for your [her] account" the mortgage note and the farm, and that he would in due course have them substituted as security for her and duly delivered and transferred to her, there can be no question that he thereby constituted himself trustee for her of the property he held, that he could not have retained it against her demand, and could not lawfully assert a claim to it. No particular form of words is necessary to create a trust: *Thornton v. Koch,* 317 Pa. 400, 176 A. 3; *Brubaker v. Lauver,* 322 Pa. 461, 185 A. 848. Any form of words is sufficient if it indicates that the settlor intended to create a trust: *Bair v. Snyder County State Bank,* 314 Pa. 85, 171 A. 274. "Any agreement . . . in writing made by a person having the power of disposal over property, whereby such person agrees or directs that particular property . . . shall be held . . . for the benefit of another, raises a trust in favor of such other person against the person making it": *Cumberland Co. v. Lemoyne Trust Co.,* 318 Pa. 85, 95, 178 A. 32; *Smith's Est.,* 144 Pa. 428,

22 A. 916; 1 Perry on Trusts, p. 79; Restatement, Trusts, Sec. 24, Illustration 1.

There being a valid trust in the property known as the Paxson Farm this trust would attach to the proceeds thereof. From the moment this fund came into the possession of the Doylestown Trust Company, it was impressed with a trust in favor of Cora Peck. Hawse had no right thereto as against her.

An attaching creditor stands in the shoes of his debtor. If the latter is not the rightful owner of the money attached, the attachment will not hold it: *Mignatti v. General Mortgage Financing Co.,* 325 Pa. 113, 189 A. 296; *Duffy v. 58th & Chester Ave. Building and Loan Assn.,* 325 Pa. 127, 189 A. 307. There can be no question here that the money rightfully belongs to Mrs. Peck.

The court below turned the case largely upon the circumstance that in his letters to the Trust Company Hawse had asked it to forward the check drawn to Mrs. Peck's order to him, in this connection saying: "Had this garnishee delivered the check to Hawse, there can be no doubt that the latter might at any time before delivering it to Mrs. Peck, have returned it to the Trust Company and directed it to draw its check to him or to some other person." With this statement we are unable to agree. The Trust Company had been instructed by Hawse to deliver the deed "only upon the receipt of $4,000.00 for the account of Cora M. Peck." It received the fund impressed with a trust in her favor. Had the Trust Company disbursed the money to anyone other than her, it would have done so at its peril. The court went on to say: "Had the check been delivered by Hawse to Peck, then her title to the fund would have been complete and superior to the attachment, and the Trust Company would have been compelled to pay her. The delivery to her would have ended Hawse's control over the fund." But the check had not been delivered to anyone, it remained in the Trust Company's hands, as did the fund on which it was an order, and that fund was

6

beyond Hawse's control, being by his express direction held for Mrs. Peck's account. As Hawse could maintain no claim to the fund, his attaching creditor cannot.

The judgment is reversed, with directions to the court below to enter judgment on the verdict for the garnishee.