Bearinger's Estate.

Argued September 27, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, LINN, STERN and BARNES, JJ.

254

*John D. Meyer,* for appellant.

*James J. Lawler,* with him *Russell H. Adams,* for appellee.

PER CURIAM, November 27, 1939:

Jacob Bearinger on March 2, 1916, with his own funds, opened a savings account in his name at the Dollars Savings Bank in Pittsburgh and thereafter continued to make deposits of his moneys therein until March 4, 1932, at which time there was to his credit in the account the sum of $10,078.30. On this latter date, Bearinger changed the account to read "Jake Bearinger, in trust for Annie F. Bearinger," his sister-in-law; then turned the passbook over to her and she retained custody of it until Bearinger's death on June 20, 1937. On May 22, 1937, while ill in bed, Bearinger sent for a neighbor, one J. Burnett Abraham, and informed him that "he wanted to fix up about some money that he had in the bank," and that he desired to take care of his sister, Elizabeth Henderhen. He also told Abraham that he wanted his debts paid from the fund in the bank and why and how he desired the balance divided. Pursuant to this conversation, Abraham drafted the following letter to Annie F. Bearinger: "Dear Sister:—It is my desire as soon after my death as possible that you pay my funeral expence and Just debts, out of our Joint Bank account. the balance of said account I want devided eaqually between my sister Elizabeth Henrehen, and your self. all other personal effects to be eaqually devided as above:". This letter was signed by Bearinger and then given to Abraham, who retained the same until after the death of Bearinger, when it was delivered to Annie F. Bearinger,

and a copy given to Elizabeth Henderhen. The letter thus prepared and delivered by Abraham speaks of "our Joint Bank account." Bearinger did not use that designation, but Abraham supposed from his conversation with Bearinger that it was a joint account. Upon the delivery of the letter, a controversy arose as to this money, and a stipulation was entered into whereby it was agreed by the parties in interest that the money would be turned over to the executor of the estate of Bearinger and that the question of ownership of the balance of the fund remaining after the payment of certain debts and administrative expenses would be submitted to the Orphans' Court for determination at the audit of the estate. The Auditing Judge decreed distribution of one-half of such balance to Annie F. Bearinger and the other one-half to Elizabeth Henderhen. After argument, the court en banc entered its final decree dismissing the exceptions of Annie F. Bearinger and affirming the decree of the Auditing Judge. Hence this appeal.

The mere act of a person depositing his funds in his own name in trust for another does not establish an irrevocable trust, but rather a tentative one: *Matter of Totten*, 179 N. Y. 112. "A tentative trust of a savings deposit in a bank can be revoked by the depositor at any time during his lifetime, by a manifestation of his intention to revoke the trust. No particular formalities are necessary to manifest such an intention": Restatement of the Law of Trusts, section 58, page 183, comment b. A careful examination of the testimony adduced in the instant case before the Auditing Judge clearly convinces us that the sole intent of Bearinger in changing his account in 1932 was merely to create a revocable or tentative trust for Annie F. Bearinger, the appellant, and that he exercised his reserved power of revocation by his letter of 1937. No sufficient evidence was produced to substantiate the contention of appellant that there was an intention on the part of Bearinger to create an irrevocable trust. There was, how-

ever, testimony offered that Bearinger changed his account to his own name in trust and turned over the passbook to appellant. Nevertheless, the mere fact that an account in a savings bank is changed to the name of the depositor "in trust" for another is not sufficient to show an intention to create an irrevocable trust: *Scanlon's Estate*, 313 Pa. 424. Nor does the delivery of the passbook, under such circumstances, in itself make the trust an irrevocable one. There must be a delivery, coupled with words of a gift or a declaration that the depositor is thereby giving to the cestui que trust the money to the credit of the depositor: *In re Halligan's Estate*, 143 N. Y. S. 676; *Matthews v. Brooklyn Savings Bank*, 208 N. Y. 508. No such words were used nor was any intention shown that Bearinger intended to transfer the ownership of the fund or dominion over it to appellant. On the contrary, she admitted that Bearinger after 1932 gave her money to deposit in the account and that she kept the book for that purpose, that he retained control over the account and made withdrawals therefrom. Thus the trust remained tentative and revocable, and Bearinger was, therefore, within his legal right in exercising his power of revocation by his letter of May 22, 1937.

Neither is there any merit in the contention of appellant that the words "desire" and "want" as used in the letter of 1937 were merely precatory. While generally such words are so considered, yet when, as here, it obviously appears their use was expressive of the intent of the testator, they are mandatory: *Croft v. Chelten Trust Co.*, 272 Pa. 514.

The learned court below, therefore, properly awarded one-half of the fund to Elizabeth Henderhen and one-half to the appellant.

Decree affirmed, at the cost of appellant.